UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

**STERLING SAVINGS BANK, a Washington Chartered Commercial Bank**,

Plaintiff,

v.

**THORNBURGH RESORT COMPANY LLC, an Oregon Limited Liability Company**,

Defendant.

Case No. 3:12-cv-00255-KI

OPINION AND ORDER ON ATTORNEY FEES AND COSTS

Charles R. Markley
Sanford R. Landress
Greene & Markley, P.C.
1515 SW Fifth Ave., Suite 600
Portland, OR 97201

Attorneys for Plaintiff

Gary Underwood Scharff
Law Office of Gary Underwood Scharff
621 SW Morrison St., Suite 1300
Portland, OR 97205

Heather A. Brann
P.O. Box 11588
Portland, OR 97211

Attorneys for Defendant

KING, Judge:

Plaintiff Sterling Savings Bank ("Sterling") successfully obtained a declaration that the claims Thornburgh Resort Company, LLC ("Thornburgh") made against Sterling were invalid. I dismissed the counterclaims alleged in Thornburgh's First Amended Answer and Counterclaims.

Pending before the Court are Sterling's Motion for Order Awarding Plaintiff Attorneys' Fees and Costs Against Defendant [95] and Thornburgh's Motion to Strike Markley Declaration [98]. Because Markley filed a Supplemental Declaration correcting any errors in his initial Declaration, Thornburgh's Motion to Strike is denied as moot.[1] Sterling seeks attorney fees in the amount of $178,713.50[2] and costs in the amount of $1,238.43.[3]

**BACKGROUND**

To resolve the pending motions, the following facts are relevant from my January 5, 2015 Opinion and Order granting summary judgment to Sterling.

---

[1]Of course, the better practice would be to properly justify billing records at the outset.

[2]Sterling's motion requests $179,458.50, but Markley's Declaration represents the amount is $178,713.50. Compare Pl.'s Mot. for Att'y Fees 2 with Markley Decl. 2.

[3]Sterling's initial cost request was $2,617.08, but it agrees I may deduct $1,378.65 as a result of objections brought by Thornburgh.

Thornburgh began designing and obtaining permits for a destination resort on its land in about 2004. Parker Group Investments, LLC ("PGI") agreed to invest in Thornburgh's project and, in exchange, Thornburgh agreed to grant PGI an interest in its property as security for the payment of any loan PGI obtained.

On November 19, 2007, Sterling Savings Bank loaned $10,956,000 to PGI pursuant to a promissory note (the "Note"). Thornburgh was not a party to the Note. PGI, Thornburgh, and others executed and delivered to Sterling a Line of Credit Trust Deed on Thornburgh's property; the Trust Deed encumbered Thornburgh's real property and secured the Note. The Note was also secured by cash owned by PGI in the amount of $7,229,655 ("Cash Collateral") held in a § 1031 exchange account.

On December 17, 2007, unbeknownst to Thornburgh, Sterling arranged for the disbursement of the Cash Collateral to pay down other debts owed to Sterling. Pl.'s Mem. in Supp. of Mot. for Summ J. 2 (presenting the disbursement as a fact); Pl.'s Answer to Def.'s First Am. Countercl. ¶¶ 18, 21. Sterling did not request replacement collateral immediately. There is evidence Sterling attempted to obtain replacement collateral several months later, but no evidence it succeeded.

The PGI loan fell into default. Sterling commenced a non-judicial foreclosure of the Trust Deed in October 2010. Two days before Sterling was scheduled to foreclose, Sterling sold the Note and Trust Deed.

On March 11, 2011, Thornburgh filed for Chapter 11 bankruptcy in an attempt to stop the foreclosure. Thornburgh then brought an adversary proceeding in Bankruptcy Court against Sterling and other defendants in May 2011. It alleged Sterling caused Thornburgh $20 million

dollars worth of damage by, among other things, disbursing the Cash Collateral without obtaining replacement collateral. Sterling and the other defendants in that case admitted to the release but denied "all other allegations." DeLashmutt Decl. Ex. S, at ¶11 [62].

The Bankruptcy Court lifted the stay. One day before the scheduled foreclosure, Thornburgh brought a declaratory and quiet title action against several entities in Deschutes County. The nonjudicial foreclosure of the Trust Deed occurred on August 31, 2011.

Sterling then brought this declaratory action. After a period of abatement and an attempt at mediation, the litigation commenced again with Thornburgh's First Amended Answer and Counterclaims. After consideration of the parties' cross-motions for summary judgment, I granted Sterling's motion and denied Thornburgh's motion. As I explained in the Opinion and Order, I concluded Sterling's disbursement of the Cash Collateral constituted only an equitable defense to liability under the suretyship contract and not a basis for counterclaims.

In its motion, Sterling also sought attorney fees under ORS 20.105(1), which required me to award attorneys' fees if I determined there was "no objectively reasonable basis" for Thornburgh's counterclaims. I concluded proper application of the principles in the Restatement demonstrated Thornburgh had no reasonable basis to bring its counterclaims against Sterling in this court. As a result, I concluded Sterling, as the prevailing party, is entitled to its attorney fees. However, I urged the parties to confer and attempt to settle Sterling's attorney fee request, and I indicated I would carefully consider all objections.

Sterling now seeks the following fees: 66.2 hours of Markley's time at a rate of $425 per hour, or $28,135; 373.6 hours of Landress' time, at rates of $300 to $350, for $128,410.50; 68 hours of Steinberg's time, at a rate of $310, for $21,080; and a total of $1,088 for paralegal time.

**DISCUSSION**

I. Motion for Attorney Fees

Thornburgh attempts to reopen the issue of whether Sterling is entitled to attorney fees at all under ORS 20.105, but it is too late for its new arguments. Based on the summary judgment briefing presented to me, I concluded Sterling is entitled to its attorney fees. Thornburgh gives me no compelling reason to reconsider my conclusion. See Smith v. Clark Cnty. School Dist., 727 F.3d 950, 955 (9th Cir. 2013) (reconsideration of a court's order must show newly discovered evidence, a change in controlling law, or that the decision was clearly erroneous or manifestly unjust). Accordingly, the question before me is the reasonableness of Sterling's fee request.

A. Legal Standards

The following factors are relevant to determining the reasonableness of the fees to which a party is entitled:

> (1) A court shall consider the following factors in determining whether to award attorney fees in any case in which an award of attorney fees is authorized by statute and in which the court has discretion to decide whether to award attorney fees:
>
> > (a) The conduct of the parties in the transactions or occurrences that gave rise to the litigation, including any conduct of a party that was reckless, willful, malicious, in bad faith or illegal.
> >
> > (b) The objective reasonableness of the claims and defenses asserted by the parties.
> >
> > (c) The extent to which an award of an attorney fee in the case would deter others from asserting good faith claims or defenses in similar cases.
> >
> > (d) The extent to which an award of an attorney fee in the case would deter others from asserting meritless claims and defenses.

(e) The objective reasonableness of the parties and the diligence of the parties and their attorneys during the proceedings.

(f) The objective reasonableness of the parties and the diligence of the parties in pursuing settlement of the dispute.

(g) The amount that the court has awarded as a prevailing party fee under ORS 20.190.

(h) Such other factors as the court may consider appropriate under the circumstances of the case.

(2) A court shall consider the factors specified in subsection (1) of this section in determining the amount of an award of attorney fees in any case in which an award of attorney fees is authorized or required by statute. In addition, the court shall consider the following factors in determining the amount of an award of attorney fees in those cases:

(a) The time and labor required in the proceeding, the novelty and difficulty of the questions involved in the proceeding and the skill needed to properly perform the legal services.

(b) The likelihood, if apparent to the client, that the acceptance of the particular employment by the attorney would preclude the attorney from taking other cases.

(c) The fee customarily charged in the locality for similar legal services.

(d) The amount involved in the controversy and the results obtained.

(e) The time limitations imposed by the client or the circumstances of the case.

(f) The nature and length of the attorney's professional relationship with the client.

(g) The experience, reputation and ability of the attorney performing the services.

(h) Whether the fee of the attorney is fixed or contingent.

ORS 20.075(1)-(2).

B. Application of the Factors

As an initial matter, as required by ORS 20.075(2), I consider the factors set forth in ORS 20.075(1) to determine the reasonableness of the fee request. Thornburgh urges me to deny fees altogether under factors (a), (b), and (c), arguing it is "undisputed" Sterling breached an obligation to Thornburgh and caused Thornburgh $8 million in damages.

To the contrary, Sterling disputed Thornburgh's allegations but any factual dispute was irrelevant to the threshold issue on which I resolved this case. Thornburgh also fails to recognize the role it played in driving up the cost of litigation. Accordingly, I do not find the conduct of the parties to be directly relevant to my examination of Sterling's motion. Nevertheless, while there is no question in my mind Sterling is entitled to judgment in its favor based on the law, I am troubled by Sterling's admission that it released the $7.2 million in Cash Collateral held as security for the Note, lack of evidence that it replaced the collateral, that Thornburgh was only ever a secondary obligor on the Note, and that there is no evidence Sterling was forthcoming with Thornburgh about what happened. These factors cause me to scrutinize Sterling's motion carefully.

Turning next to the factors outlined in ORS 20.075(2), I conclude factors (b), (e), (f), (g) and (h) are either neutral or irrelevant.

Factor (c) directs me to consider the "fee customarily charged in the locality for similar legal services." To do that, I consult the Oregon State Bar's Economic Survey, the most recent of which was published in 2012. See https://osbar.org/_docs/resources/Econsurveys/12EconomicSurvey.pdf (last visited Mar. 16, 2015); Roberts v. Interstate Distrib. Co., 242 F. Supp. 2d 850, 857 (D. Or. 2002) (consult OSB

Economic Survey). Thornburgh objects to the billing rates of Sterling's attorneys, suggesting that various references to insurance companies in the billing records mean Sterling's attorneys were performing insurance defense and should bill at $185 an hour. Sterling responds that because the dispute between the parties started as a bankruptcy case, its attorneys are entitled to bill at the much higher bankruptcy median rate of $380.

Although Sterling's attorneys were not providing insurance defense, neither was this a bankruptcy case; thus, Sterling's attorneys' hourly rates are not appropriately calculated for their role in the litigation in this court and I adjust the hourly rates for Landress and Steinberg downward to the median rate charged by business/corporate litigators in Portland of $300 an hour. I adjust Markley's rate to $360, the billing rate for those business litigators in the 75th percentile, which properly accounts for his over 30 years of experience.

Factor (a) requires me to consider the "time and labor required in the proceeding." Thornburgh points out block billing problems. Sterling contends it did not block bill, but its billing records contain multiple entries which combine descriptions of tasks. Welch v. Metrol. Life Ins. Co., 480 F.3d 942, 945 n.2 (9th Cir. 2007); see also Orme v. Burlington Coat Factory of Or., LLC, No. 07-cv-859-MO, 2010 WL 1838740, at *6, n.3 (D. Or. May 3, 2010) (reciting a more detailed definition: block billing as "any single time entry of three or more hours containing four or more tasks, or containing only two tasks where one of the tasks could have taken from a small to a substantial period of time"). Regardless of the definition used, block billing prevents the Court from properly assessing the reasonableness of the time spent on a single tasks. For example, the entry for 7/6/12 indicates Landress spent 3.1 hours on the combined tasks of reviewing loan files, reviewing a motion for extension of time to file an

answer, and e-mailing his client regarding the same. As a result, I cannot determine whether Landress spent an unreasonable amount of time reviewing the motion for extension of time because he combined that task with reviewing loan files. I strike 110.4 hours (3.3 for Markley, 99.9 for Landress, and 7.2 for Steinberg) that qualify as block billing.[4] Prison Legal News v. Umatilla Cnty, No. 2:12-cv-00101-SU, 2013 WL 2156471, at *8 (D. Or. May 16, 2013) (adopted by J. Mosman) (striking block-billed hours); see also Sterling Savings Bank v. Sequoia Crossing, LLC, No. 09-cv-555-AC, 2010 WL 3210855, at *5 (D. Or. Aug. 11, 2010) (warning Landress and Markley of block billing but excusing it due to increments of less than three hours).

Thornburgh also points out that Sterling's attorneys billed for time spent monitoring and participating in the Deschutes County litigation. Sterling insists it segregated its bills to ensure it did not bill for matters unrelated to this litigation, but I find a total of 15.9 hours (1.1 for Markley and 14.8 for Landress) were not related to this litigation.[5] Many of these billing entries are also

---

[4] See entries dated 10/17/12 (3.5); 2/14/14 (3 hours); 2/24/14 (3.1 hours); 2/26/14 (4.6 hours); 4/9/14 (5.7 hours); 4/14/14 (3.5 hours); 5/9/14 (3.7 hours); 5/20/14 (6 hours); 7/2/14 (3.8 hours); 7/11/14 (3 hours); 7/28/14 (5 hours); 8/28/14 (3.5 hours); 9/8/14 (6.1 hours); 9/11/14 (5.8 hours); 9/18/14 (3 hours); 9/22/14 (3.3 hours); 9/25/14 (4 hours); 9/30/14 (5 hours); 10/1/14 (6.6 hours); 10/3/14 (5.6 hours); 10/7/14 (5 hours); 10/8/14 (4.3 hours); 10/9/14 (3.6 hours); 10/28/14 (3.6 hours); 10/30/14 (3 hours). I note many more instances of block billing in quantities smaller than three hours, which the Court has discretion to excuse. Noel v. Hall, No. 3:99-cv-00649-AC, 2013 WL 5376542, at *6 (D. Or. Sept. 24, 2013).

[5] See 6/12/12 (1.10, which includes "[r]evise bankruptcy court response"); 2/14/13 and 2/15/13 (4.7 hours discussing "claims against Sterling in Deschutes County lawsuit"); 5/3/13 (1 hour re: "abatement issues in Deschutes County case); 5/8/13 (1.8 hours re: "renewed motion to abate in Deschutes County case"); 5/9/13 (1 hour to "[p]repare for and attend telephone status conference;" does not say with whom or on what subject; no telephone conference with this Court on that date); 8/5/13, 8/13/13, 8/28/13, 10/11/13 (2 hours on abatement issues in Deschutes County case). Additionally, the time they report in April 2013 came just after they had filed a status report with the Court. Given the entries listed above, I find the following entries were more likely related to work undertaken in the Deschutes County case than in this litigation:

(continued...)

block billed so I must strike all 15.9 hours as I cannot determine what was reasonably associated with work in this case.

I have a grave concern with the number of hours Markley and Landress spent on tasks associated with an unsuccessful court-sponsored mediation. Even after eliminating almost 19 hours for block billing problems (included above), the attorneys spent 61.8 hours on mediation-related tasks (12.5 hours for Markley and 49.3 hours for Landress). I recognize the importance of engaging in settlement discussions prior to summary judgment, and I know Sterling explored issues beyond the one ultimately successful on summary judgment, but I nevertheless conclude half of these hours should have been sufficient to prepare and participate in mediation. See Unum Life Ins. Co. of America v. Martin, No. 6:13-cv-00158-AA, 2014 WL 3046017, at *4 (D. Or. July 1, 2014) (36.1 hours in mediation too much considering lack of novelty; awarding a little more than half). I strike 6.2 hours from Markley's request and 24.7 from Landress' request.

Factor (d) weighs in favor of Sterling's attorneys as they were fully successful in their efforts to dismiss Thornburgh's counterclaims.

Applying the reductions above, I award $20,016 to Markley (55.6 hours x $360), $70,260 to Landress (234.2 hours x $300), and $18,240 to Steinberg (60.8 x $300). These fees ($108,516) together with the paralegals' fees ($1,088) result in a total attorneys' fee award of $109,604.

---

[5](...continued)
4/8/13 (.20); 4/16/13 (2 hours); 4/18/13 (.10); 4/24/13 (.80); 4/29/13 (1 hour); 9/20/13 (.20).

II. Bill of Costs

After agreeing to deductions argued by Thornburgh, Sterling seeks $1,238.43 in costs for filing fees and photocopies.

An award of costs is generally governed by federal law. In re Merrill Lynch Relocation Mgmt., Inc., 812 F.2d 1116, 1120 n.2 (9th Cir. 1987). Federal Rule of Civil Procedure 54(d)(1) provides, in part: "Unless a federal statute, these rules or a court order provides otherwise, costs–other than attorney's fees–should be allowed to the prevailing party." Expenses which may be taxed as costs against a losing party are enumerated in 28 U.S.C. § 1920, as follows:

> A judge or clerk of any court of the United States may tax as costs the following:
>
> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

Thornburgh objects to $888.43 in photocopy costs because it was never provided with any photocopies. Steinberg explains Thornburgh's attorneys requested documents in the loan file, but the original bank files could not leave Sterling's possession for very long; the cost for these copies was $250.99, which I find to be reasonable. The remaining 10,000 pages were

either produced to defendant, or were held pending the entry of a protective order. I find these costs, too, to be reasonable. Sterling is entitled to $1,238.43 in costs.

**CONCLUSION**

For the foregoing reasons, Sterling's Motion for Order Awarding Plaintiff Attorneys' Fees and Costs Against Defendant [95] is granted in part and Thornburgh's Motion to Strike Markley Declaration [98] is denied as moot. If it wants one, Sterling may prepare and submit a supplemental judgment consistent with this Opinion and Order.

IT IS SO ORDERED.

DATED this 23rd day of March, 2015.

/s/ Garr M. King
Garr M. King
United States District Judge